No. 25030

**The People of the State of Colorado v. Jesse S. Bugarin**
(507 P.2d 879)

Decided March 5, 1973.                    Rehearing denied March 26, 1973.

58

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Patricia W. Robb, Special Assistant, for plaintiff-appellee.

H. D. Reed, for defendant-appellant.

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Jesse S. Bugarin was convicted by a jury of the crimes of aggravated robbery, 1967 Perm. Supp., C.R.S. 1963, 40-5-1, and conspiracy to commit robbery, C.R.S. 1963, 40-7-35. Two men, acting in concert, held up a drug store in Denver. Witnesses to the robbery identified the defendant in a photographic display as the robber who had the gun. After the defendant was arrested, a lineup was held, and the defendant was again identified by the eyewitnesses. At the time of trial, these same witnesses identified the defendant as one of the robbers. The primary theory of defense was alibi. The jury determined that the identification testimony ruled out the alibi and established the defendant's guilt beyond a

reasonable doubt. The sentence imposed in this case was to run concurrently with the sentence imposed in *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 [announced contemporaneously with this opinion]. Following the defendant's conviction and sentence, he appealed to this Court claiming that the identification testimony and procedures violated constitutional standards. We disagree and affirm the conviction.

## I.
### Identification

The photographic displays which the police prepared after the robbery occurred were not suggestive and were used by the police to ascertain the identity of the robbers. Our Court has upheld the use of photographic displays as a part of police investigative procedure. *People v. Knapp,* 180 Colo. 281, 505 P.2d 7 (1973); *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972); *Brown v. People,* 177 Colo. 397, 494 P.2d 587 (1972).

Moreover, counsel is not required at a photographic display or lineup which takes place during the investigative stage of the criminal proceeding. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *People v. Knapp, supra; People v. Barker, supra; Brown v. People, supra.*

The defendant also asserts that the identification which occurred at the lineup was tainted. He predicates his claim on the fact that he had not been taken before a magistrate in accordance with the requirements of Crim. P. 5, and had, therefore, not been properly advised of his rights. His assertion overlooks the fact that he signed advisement forms which fully complied with the dictates of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He was also represented by the public defender at the lineup. Our opinion in *Jaggers v. People,* 174 Colo. 430, 484 P.2d 796 (1971), upholds the trial court and refutes the defendant's claim that Crim. P. 5 requires reversal.

As a further attack on the identification testimony, the defendant claims that reversible error occurred when the

trial court permitted witnesses to bolster their in-court identification of the defendant by testifying that they had previously picked the defendant out of fifteen people who were in the courtroom when they were originally subpoenaed to testify. The behavior of a witness at an earlier confrontation with the defendant bears on the credibility of the witness's identification of the defendant at the trial. *Arthur v. People,* 165 Colo. 63, 437 P.2d 41 (1968). Prior to the time that identification testimony was permitted, a proper *in camera* hearing was held, and the trial court determined that the identification procedures met constitutional standards. *People v. Lovato,* 180 Colo. 446, 506 P.2d 361. Moreover, no contemporaneous objection was made to the testimony of the previous inadvertent viewing of the defendant by the witnesses, and, in fact, defense counsel developed the circumstances of the confrontation by cross-examination. For the reasons herein stated, we find no error in the identification phase of this case.

## II.
### Mug Shots

The prosecution introduced into evidence the set of photographs from which the eyewitnesses had picked the defendant's photograph. These photographs had been selected from police files and were classic mug shots — combined front and side view photographs — which are widely known to be used by police identification bureaus. The trial court ordered that all identifying data be masked or cut off the photographs in an effort to avoid the implication that the defendant was carried in police files as a known or suspected criminal. Even with this precaution, the pictures transmitted to the jury the taint and suspicion of prior criminality that such pictures inevitably create. We criticized the use of such police identification photographs as substantive evidence in *People v. Bugarin, supra.*

In this case however, defense counsel abandoned his objection. When the trial court ordered that all identifying data on the photographs be masked or cut off, defense counsel no longer claimed that the photographs were

62

inherently prejudicial to the defendant. Moreover, the trial court instructed the jury to disregard the masked and cut-off portions. In these circumstances, we do not find reversible error. We do, nevertheless, again point out that such photographs which necessarily import prior criminality to the defendant should not be used. In our view, the evidence of guilt in this case was substantial, and the sole error of admitting the defendant's mug shot does not, in and of itself, constitute reversible error. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

Accordingly, we affirm.